IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Eric David Jeter, #152640, | CIVIL ACTION NO. 9:11-1149-JFA-BM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Lieutenant L'Amanda Smith, Officer NFN Hanna, Officer T. Smith, Head Nurse Nancy NLN, Major NFN Norris, Captain NFN Brunson, Sgt. NFN Flemming, Officer NFN Eaddy, Lieutenant NFN Brown, individually and in their official capacities, | |
| Defendants. | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was a pretrial detainee at the Florence County Detention Center (FCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on October 26, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on October 31, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. After receiving an extension of time, Plaintiff filed a memorandum in opposition



to the Defendants' motion on December 14, 2011.

The Defendants' motion is now before the Court for disposition.[1]

### Background and Evidence

Plaintiff, a frequent filer of pro se litigation in this Court, alleges in his Verified Complaint[2] that on March 2, 2011, he was in the Florence County Detention Center medical department suffering from high blood pressure (166/122) and was issued some medication. Plaintiff alleges that his blood pressure should thereafter have been read daily until stabilized, but that the medical department failed to follow this protocol. Plaintiff alleges that on March 11, 2011 he filed a request concerning this matter with the Defendant Captain Brunson, who in turn instructed the medical department to check his blood pressure, and that on March 14, 2011 it was determined to be 202/116. Plaintiff alleges that this delay in checking his blood pressure to determine the effectiveness of the prescribed medication placed him at substantial risk of kidney and liver damage, as well as a possible stroke and heart attack. Plaintiff alleges that on March 14, 2011, the medical department changed his medication to a medication he should have been receiving all along. Plaintiff alleges that he filed grievances concerning this matter, but that they were unanswered.

Plaintiff further alleges that the medical department placed him on medical bed rest

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



for seventy-two (72) hours on March 14, 2011, following which the Defendant Lt. Smith ordered that he be placed on "medical lock down" for interfering with the bed rest order from the medical department. Plaintiff alleges that his bed rest orders "included overly restrictive conditions . . . ." Plaintiff alleges that his seventy-two hours of bed rest was terminated by the medical department on March 18, 2011, but that the Defendant Smith illegally ordered his bed rest on her shift to continue through March 20, 2011. Plaintiff alleges that Smith also illegally restricted his visitation on March 21, 2011. Plaintiff alleges this conduct was in retaliation for a grievance he filed on March 18, 2011. Plaintiff further alleges that when he inquired into the status of a grievance on April 25, 2011, he was "threatened and instructed not to write concerning this grievance again".

Plaintiff also complains that after he told the Detention Center that he was not going to pay for access to case law and court decisions from the law library, the Defendant Smith started harassing and retaliating against him again. Plaintiff alleges that the Defendant Captain Brunson advised Plaintiff in a written reply that "if you need information, it is our duty to give it to you. But do not threaten our facility". Plaintiff alleges that when he inquired into the status of his other grievances, Brunson told him to "not write concerning this matter again".

Plaintiff alleges that he has also filed grievances concerning inadequate windows at the facility, concerning spider bites, and inadequate toilet facilities, but received no reply. Plaintiff alleges that on April 30, 2011 he was deprived of equipment issued by the medical department by the Defendant Officer Hanna, even though the issuance of this equipment had been approved by Captain Brunson. Plaintiff further alleges that every time Smith works a shift he is "subjected to constant threats and sanctions, disrespected and degraded, illegally restricted and harassed." Plaintiff alleges he does not eat any food provided during Smith's shift, because Smith has "special trays" for



inmates who cause trouble, which has food to make inmates sick. Plaintiff also alleges that Officer Hanna does not change her rubber gloves after he sneezes or rubs his nose prior to serving food, and that the Defendant Officer Eaddy issued him a dirty jumpsuit. Plaintiff also complains that Officer Eaddy uses profanity on a regular basis towards inmates. Plaintiff complains that Officer Hanna gave him a brown cup instead of a styrofoam cup, and that Smith told him if he said anything he would be sent to administrative segregation. Plaintiff alleges that the Defendant Sgt. Flemming is Hanna's superior, and is responsible for his conduct. Plaintiff alleges he continued to file grievances concerning these matters, but that no action was taken.

Later on in his Complaint, Plaintiff complains that the medical department did not read his blood pressure for over three weeks, which is a violation of the Detention Center's Policy of reading blood pressure every two weeks. Plaintiff alleges that this violated his right to adequate medical care. With respect to access to the law library, Plaintiff alleges that the Detention Center's method of access to the law library is by internet, and that the Defendant Brunson charges twenty-five cents per page for copies. Plaintiff complains that if there is no money in an inmate's account, Brunson will debit the inmate's account when money is received, and that the Defendants are illegally charging inmates for access to the law library. Plaintiff further alleges that on May 2, 2011 the Defendant Lieutenant Brown authorized an illegal search of the A-Unit, where Plaintiff was housed. Plaintiff alleges that Detention officials searched his cell while he was in the shower, but that the law requires that inmates be permitted to observe searches of their cells. Plaintiff has attached numerous exhibits to his Complaint, including copies of inmate request forms, receipts where he was charged for copies of cases, and copies of various grievances with the noted staff responses. Plaintiff seeks injunctive relief and monetary damages. See generally, Plaintiff's Verified



Complaint.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Nancy Truluck, Registered Nurse and Director of Medical Services for the Florence County Sheriff's Office, who attests that she was assigned to provide medical and health care services to pretrial detainees held at the Florence County Detention Center. Truluck attests that at all relevant times Plaintiff was a pretrial detainee at the Florence County Detention Center before being transferred to the Williamsburg County Detention Center on or about May 11, 2011. Truluck attests that Plaintiff was detained at the FCDC from February 23, 2011 through May 2011, and that attached to her affidavit as Exhibit A is an accurate summary of Plaintiff's medical records for that period of time. Truluck attests that following an initial screening during intake on February 23, 2011, Plaintiff was evaluated by medical staff on February 28, 2011, at which time he was observed to have high blood pressure. Truluck attests that Plaintiff was very agitated during his medical evaluation, yelling at nurse staff and refusing to take medication for his blood pressure at that time. Truluck attests that Plaintiff was evaluated again on March 3, 2011, where he was again agitated and initially refused to take his medication. Truluck attests that, after explaining the benefits of medication to him, Plaintiff eventually agreed to take the prescribed medication and that he continued to be monitored for elevated blood pressure every two weeks. Specifically, Plaintiff's blood pressure was continually monitored on March 14, March 16, March 22, April 1, April 11, and May 3, 2011 before his transfer on or about May 11, 2011. Truluck attests that Plaintiff also signed off on daily medication logs documenting the administration of medication throughout his stay at the detention center, all as is documented in attached Exhibit A to her affidavit. Truluck attests that Plaintiff's medical treatment was appropriate for his complaints, did not constitute any deviation



from the generally accepted standards within her profession, that Plaintiff received excellent quality care while at the Detention Center, and that Plaintiff's medical care and treatment was properly administered and was the best course of care and treatment for his alleged complaints. See generally, Truluck Affidavit, with attached exhibits.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

First, since Plaintiff is no longer incarcerated at the FCDC, to the extent he is seeking injunctive and/or declaratory relief, his claims are moot. Slade v. Hampton Roads Reg'l Jail, 407



F.3d 243, 248-249 (4th Cir. 2005)[holding that former detainee's request for injunctive relief was moot]; Taggart v. Oklahoma, 74 Fed.Appx. 880, 882 (10th Cir. 2003)[inmate's claims concerning his medical needs against prison officials for injunctive relief were rendered moot by his release]; LaFlame v. Montgomery County Sheriff's Dep't., 3 Fed.Appx. 346 at * * 1 (6th Cir. Jan. 31, 2003)[same]. Plaintiff's claim for monetary damages survives his release from the Detention Center; see Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976); and as public officials, the Defendants are all subject to suit for damages in their individual capacities in a § 1983 lawsuit. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186, 1187 (4th Cir. 1991). Liberally construed, Plaintiff is seeking damages against the Defendants in their individual capacities. However, for the reasons set forth hereinbelow, the undersigned does not find that the evidence is sufficient to create a genuine issue of fact as to whether any named Defendant has violated Plaintiff's constitutional rights.

The Eighth Amendment is used to evaluate conditions of confinement for those convicted of crimes. Since Plaintiff was a pre-trial detainee during the time period set forth in the complaint, his claims are evaluated under the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979). However, for purposes of consideration of Plaintiff's claims, the standard of whether Plaintiff received constitutionally adequate medical care and/or his conditions of confinement met constitutional muster is essentially the same. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)[Holding that the 14th Amendment guarantees at least 8th Amendment protections]. Under this standard, in order to proceed with his claim for denial of adequate medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle

- 7 -



v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence. Rather, the evidence shows that Plaintiff was seen by medical staff at the detention center on numerous occasions, received medication for his blood pressure, had his blood pressure monitored on a regular basis, and even had a seventy-two hour bed rest requirement imposed when deemed necessary. See Truluck Affidavit, attached Exhibit A, pp. 3-7, 9-10, 15-25. Lab results from April 2011 were also essentially normal. Id., pp. 11-12.

While Plaintiff argues his blood pressure should have initially been monitored daily, and then every two weeks, the Defendants have provided medical records showing that Plaintiff received regular medical care as well as an affidavit from a registered nurse who attests that Plaintiff's medical treatment was appropriate for his complaints and did not constitute any deviation from the generally accepted standards within the medical profession. Truluck Affidavit, with attached exhibit. Conversely, Plaintiff has provided no medical evidence to dispute any of the Defendants' evidence, and indeed several of his own exhibits reflect that Plaintiff acknowledged to jail officials that the medication he received had brought his blood pressure under control. None of Plaintiff's exhibits constitute evidence that any Defendant was deliberately indifferent to his medical condition, and nothing in the exhibits before the Court gives rise to a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs, nor do they show that Plaintiff suffered any injury or any aggravation of a medical condition based on the decisions made. See generally, Plaintiff's Exhibits (attached to Complaint), Inmate Request Forms dated March 11, April 6, April 11, and April 12 (two); see also Defendants' Exhibit [Medical



Records].

Plaintiff, by contrast, only generally alleges in his Complaint that medical personnel refused to provide him the treatment he desired. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]. Such allegations are not sufficient to allow this claim to proceed. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]). While Plaintiff may not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents and evidence which refute his claims. See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennen, 511 U.S. 825, 837 (1994).



Plaintiff may, of course, pursue a claim in state court if he believes the medical care he received while at the Detention Center was inadequate. However, the evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs, the standard for a constitutional claim, and therefore Plaintiff's federal § 1983 medical claim should be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle v. Gamble, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

With respect to Plaintiff's other comments in his Complaint that he had filed grievances concerning the conditions of his confinement, including complaints about the windows in his cell, the presence of insects, dissatisfaction with toilet facilities, cell illumination (mentioned in one of his Inmate Request Forms), and alleged restraints on his access to legal materials, these general and conclusory assertions fail to separately state a valid § 1983 claim, as Plaintiff has set forth no specific facts or evidence to show a violation of his constitutional rights.[3] During the time

---

[3]The Defendants apparently considered Plaintiff's Complaint as only asserting the cited medical claim, and therefore provided evidence only with respect to that claim. Since the Defendants failed to submit any evidence with respect to these other issues, and in the event they are intended as separate claims, the undersigned has evaluated these claims as presented by Plaintiff in his Verified Complaint, assuming the factual allegations made by Plaintiff with respect to these
(continued...)



period set forth in the complaint, Plaintiff was an inmate in a County jail, not a hotel. It should be expected that conditions in such a setting are often times less than ideal. Lunsford v. Bennett, 17 F.3d 1574, 1581 (7th Cir. 1994); Hadley v. Peters, No. 94-1207, 1995 WL 675990 * 8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988)). Plaintiff brief, general, and conclusory allegations in his Complaint concerning the condition of the toilet facilities, presence of bugs, inadequate window treatments, distrust of the food service, and too much lighting in the cells, are simply insufficient to survive summary judgment absent any supporting evidence or documentation detailing the severity of these alleged deprivations, and none of Plaintiff's exhibits provide any such documentation or evidence of a constitutional violation. Rather, they simply reflect the complaints Plaintiff made to jail authorities on a variety of issues. Papasan v. Allain, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations]; House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; cf. Murray v. Edward's County Sheriff's Department, 248 Fed.Appx. 993, 998-999 (10th Cir. Oct. 1, 2007)[upholding summary judgment for Defendant jail officials on grounds that detainee had failed to establish that his sleep problems from continuous cell illumination were sufficiently severe to trigger the Eighth Amendment], cert. denied, 553 U.S. 1035

---

[3](...continued)
issues to be true. See also Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996)[Facts and evidence are considered in the light most favorable to the party opposing summary judgment].

- 11 -



(2008); Tafari v. Weinstock, No. 07-693, 2010 WL 3420424 at * 7 (W.D.N.Y. Aug. 27, 2010)["[T]o establish a valid claim that the denial of food (or the denial of a medically proscribed diet) constitutes [a constitutional] violation, one must establish that there was a 'sufficiently serious condition' that resulted from the food not being received."]; cf. Beverati v. Smith, 120 F.3d 500, 504 and n. 4 (4th Cir. 1997) [accepting Plaintiff's allegations for purposes of summary judgment that cells were unbearably hot, infested with vermin, smeared with human feces and urine, flooded with water from a leaky toilet above, and where food provided was cold and provided in smaller portions, but holding that such conditions were not "so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."]; Kidwell v. Buchanan, No. 93-15056, 1993 WL 230224 at **1 (9th Cir. June 29, 1993) [Where temporary restriction of amenities was found not to be cruel and unusual punishment].

Further, Plaintiff has failed to show, or even allege, that he suffered any injury whatsoever as a result of the conditions he complains of. This lack of a compensable injury is fatal to his damages claim. Strickler v. Waters, 989 F.2d 1375, 1379, 1381 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993)["In order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or



emotional injury resulting from the challenged conditions"]; Shakka v. Smith, 71 F.3d 162,166 (4th Cir. 1995)["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"]; Holley v. Johnson, No. 08-629, 2010 WL 2640328 at * * 9-15 (W.D.Va. June 30, 2010)[noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]; see also Harris v. Fleming, 839 F.2d at 1235 [prisoner deprived of toilet paper, soap, toothpaste and toothbrush while kept in filthy, roach infested cell suffered no punishment when no physical harm resulted]; Wilson v. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process rights, as detainee failed to allege remedial injury]. Plaintiff's complaint about the search of his jail cell outside of his presence is also patently without merit. Bell, 441 U.S. 557 [Conducting unannounced searches of jail cell at irregular intervals and not permitting inmates to observe the searches was not a violation of inmates Fourth Amendment rights]; Hudson v. Palmer, 468 U. S. 517, 527-528, 536 (1984)[Fourth Amendment has no applicability to a prison cell]; Stone v. Brown, No. 10-150, 2010 WL 4955779 at * 2 (E.D.Tex. Dec. 1, 201)[No § 1983 right for prisoner to observe a random search of his cell]; cf. Gee v. Pacheco, 627 F.3d 1178, 1194-1195 (10th Cir. 2010)[No Fourteenth Amendment right to observe search of cell.].

While Plaintiff also generally alleges in his Complaint that he believes some of the

- 13 -



conditions imposed on him were out of retaliation for his having filed grievances or making complaints, Plaintiff's conclusory and bare boned claim that he was retaliated against for filing grievances, by itself and again without any supporting facts or evidence, fails to state a claim. See Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curium) [speculative and conclusory allegations cannot support retaliation claim]; LaCroix v. Williams, No. 97-0790, 2000 WL 1375737 at *4 (W.D.N.Y. Sept. 21, 2000) ["Plaintiff's conclusory allegations aside, there is simply nothing in the record to support his version of the facts and plaintiff's claim for retaliation fails"]; Woods v. Edwards, 51 F.3d 577, 580-581 (5th Cir. 1995) [summary judgment affirmed where inmate offered no evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights]; Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus].

Plaintiff's claims about being referred to in a degrading manner and/or being cursed at by one or more of the Defendants, again assumed to be true for purposes of summary judgment, also fail to set forth a claim of a constitutional magnitude. Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Ajaj v. United States, 479 F.Supp. 2d 501, 538 n. 16 (D.S.C. 2007); Malsh v. Austin, 901 F.Supp. 757 (S.D.N.Y. 1995)["Verbal assault, standing alone, is not a . . . cognizable injury in a 1983 civil rights action"]; Sluys v. Gribetz, 842 F.Supp. 764, 765 n.1 (S.D.N.Y. 1994), aff'd., Sluys v. Gribetz, 41 F.3d 1503 (2d Cir. 1994); cf. Batista v. Rodriguez, 702 F.2d 393, 398 (2nd Cir. 1985); Musto v. Trinity Food Service, Inc., No. 07-231, 2010 WL 3565723 at * 13 (M.D.Fla. 2010)[Although "racial epithets are repulsive and generally the weapon of the uncivilized, . . . verbal harassment does not state a claim for relief in a federal civil rights action."] Therefore, while it is



indeed reprehensible if jail officials are engaging in such conduct, it is not the type of claim Plaintiff may pursue in a § 1983 lawsuit.

Plaintiff has also failed to present any evidence to create a genuine issue of fact as to whether the Defendants' policies with respect to charging for computer printouts of cases Plaintiff was researching denied him access to the courts or otherwise violated his constitutional rights. Plaintiff does not allege that he was denied access to the jail's law library facilities. His complaint is that he had to pay for his copies. A denial of free photocopying does not in and of itself amount to a constitutional violation. Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991), citing Sands v. Lewis, 886 F.2d 1166, 1169 (9th Cir. 1989)["Numerous courts have rejected any constitutional right to free and unlimited photocopying"]. Rather, to set forth a viable access to court claim, Plaintiff has to submit evidence sufficient to create a genuine issue of fact as to whether the Defendants' copy policy denied him adequate access to the courts. Plaintiff's own numerous filings and attachments to his Complaint, which include copies of the case he discusses in his Complaint, belie such a claim. Further, in order to pursue a claim for denial of access to the courts, Plaintiff must not only allege facts sufficient to show that he was denied access to the courts, but that he suffered some actual injury or specific harm as a result. Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993). Plaintiff has failed to make, or even allege, any such showing. This claim is therefore without merit.

Finally, to the extent Plaintiff's claims include accusations that one or more of the named Defendants mishandled or improperly handled his grievances, that is not a claim cognizable



in this Court in a § 1983 action, as there is no constitutional right to access to a prison grievance procedure. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; Burnside v. Moser, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30, 2005). Therefore, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim. Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo. 1986) [holding that an inmate grievance procedure is not constitutionally required]; see also McGuire v. Forr, No. 94-6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996) [creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance procedure]; Moore v. Sergent, No. 01-1271, 2001 WL 1355298 (6th Cir. Oct. 26, 2001); cf. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) [prison officials may place reasonable limits on prisoner's access to grievance procedure]. Further, even if the Court were to assume for purposes of summary judgment that one or more of the Defendants violated jail polices in their handling of Plaintiff's complaints or grievances, the violation of such policies also does not constitute a violation of Plaintiff's constitutional rights, and is therefore not assertable in a § 1983 action. See Keeler v. Pea, 782 F.Supp. 42, 44 C.D.S.C. 1992); cf. Scott v. Hamidullah, C/A No. 3:05-3027-CMC-JRM, 2007 WL 904803 *5 n. 6 (D.S.C. March 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No.



06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

None of these other allegations therefore state a viable claim.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

                                        Bristow Marchant
                                        United States Magistrate Judge

February 24, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

